**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT TERRY RASSIEUR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21 CV 1269 DDN |
| | ) | |
| METLIFE AUTO & HOME | ) | |
| INSURANCE AGENCY, INC., | ) | |
| | ) | |
| METROPOLITAN PROPERTY AND | ) | |
| CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ECONOMY PREMIER ASSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER

This matter is before the Court on the motion of defendants Metlife Auto & Home Insurance Agency, Inc., Metropolitan Casualty Insurance Company, and Economy Premier Assurance Company for summary judgment.  (Doc. 37.)  The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

For the following reasons, defendants' motion is granted.

## BACKGROUND

*Factual allegations*

Plaintiff alleges the following in his complaint.  (Doc. 5.)  On May 1, 2016, while plaintiff was riding his bicycle, a non-party motor vehicle driver collided with plaintiff. The impact caused plaintiff to be ejected from his bicycle, striking the hood and windshield

of the driver's vehicle before falling to the pavement.  Plaintiff was rushed to Mercy Hospital, where he was treated for multiple cuts and bruises, a fractured pelvis requiring multiple surgeries, a broken left femur requiring surgery, a cracked tibia, a fractured T-5 vertebra, multiple neck fractures, a concussion/traumatic brain injury, and a bleed on his brain.  He was hospitalized from May 1 until May 15, 2016, before being transferred to Mercy Rehabilitation for intensive physical and occupational therapy, from which he was discharged on June 2, 2016.  Once he returned home, he required home health aides to assist him in activities of daily living.  Plaintiff continues to suffer from the injuries he sustained in the collision, and they have affected his ability to labor and enjoy life.

Plaintiff sought and received defendant Metlife's permission to settle his injury claim against the driver for the $250,000 policy limit offered by the driver's insurance company.  On June 19, 2017, plaintiff executed a release of the driver, specifically preserving his ability to pursue all underinsured motorist coverage claims.  Plaintiff thereafter received the $250,000 payment from the driver's insurance company.

Plaintiff seeks underinsured motorist (UIM) benefits under his own policy, which was issued by defendant Economy Premier Assurance Company (EPAC).  He has demanded the UIM limits of all four available policies; defendants have made one payment of $300,000, the value of one UIM policy limit.

***The policy***

The declarations page states "The following coverages and limits apply to all listed land motor vehicles garaged in this state where a premium is shown for coverage. COVERAGE LIMITS: Uninsured/Underinsured Motorist $300,000."  (Doc. 39-2 at 4.) The declarations page also lists a combined premium of $97.00 for underinsured motorist (UM) and UIM coverage, applicable to each covered vehicle. (*Id*. at 5-7.)  The "Policy Conditions and Premiums" section states that four forms comprise the policy, including the Missouri Policy Contract, which is the general insurance contract, and the Missouri Amendment. (*Id*. at 2.)  The table of contents for the general policy refers only to UM

- 2 -

coverage, not to UIM coverage.  (*Id*. at 15.)  The UM coverage section in the general policy contains the following language relevant to UIM claims:

> If the other driver has insurance, but not enough to cover your damages, PAK II pays the difference up to the limit shown on the Coverage Summary. In no event will PAK II pay more than the difference between what is paid by the other driver's insurer and the PAK II limits shown on the Coverage Summary for Uninsured Motorists coverage. In the example given, if the other driver had $25,000 in insurance, PAK II would pay the difference between that insurance and what you were awarded, or $75,000.
>
> Any liability payable to the owner or operator of an uninsured motor vehicle shall be reduced by any amount paid or payable to you or your family under the Uninsured Motorist Protection coverage of PAK II. This applies only if your uninsured motorist claim and the liability claim of the owner or operator of the uninsured motor vehicle arise out of the same accident.

(Doc. 39-2 at 20.)

The Missouri Amendment, which is not referenced in the general policy but is the next document in the policy package, states that the "[UM] Protection section has been deleted and replaced in its entirety" by a UM/UIM Motorist Protection section; that section contains separate subsections for UM and UIM coverage.  (Doc. 39-3 at 10-11.)  The UIM coverage subsection provides that the policy's maximum limit of liability is the UIM limit shown on the declaration page.  (Doc. 39-3 at 11.)  The UIM section further states that the UIM limit is the most that defendants will pay "regardless of the number of . . . vehicles or premiums shown" on the declarations page.  (*Id*.)

## **GENERAL LEGAL PRINCIPLES**

Summary judgment is appropriate if there is no dispute of material fact, reasonable fact finders could not find in favor of the nonmoving party, and the movant is entitled to judgment as a matter of law.  *Shrable v. Eaton Corp.*, 695 F.3d 768, 770 (8th Cir. 2012); *see also* Fed. R. Civ. P. 56(a).  "Insurance disputes are particularly well suited for summary judgment because the proper construction of an insurance contract is always an issue of

law for the court."  *Modern Equipment Co. v. Continental Western Ins. Co., Inc.*, 355 F.3d 1125, 1128 (8th Cir. 2004) (citation omitted).

## **DISCUSSION**

Defendants move for summary judgment on the issue of "stacking" the UIM benefit limits for each of the vehicles covered under plaintiff's policy.[1]  Defendants argue that the policy clearly and unambiguously prohibits stacking, so they have already paid the full amount owed to plaintiff.  (Doc. 24 at 4.)  Plaintiff argues that the policy lumps UM and UIM benefits together in multiple places, so the UIM anti-stacking provisions in the policy are unenforceable.  (Doc. 40 at 7-8.)  He also contends that the policy is ambiguous because the declarations page lists separate policy limits for all vehicles, but the Missouri Amendment takes away that coverage.  (Doc. 40 at 12.)

"'Stacking' refers to an insured's ability to obtain multiple insurance coverage benefits for an injury . . . from multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle."  *Niswonger v. Farm Bureau Town & Country Ins. Co. of Missouri*, 992 S.W.2d 308, 313 (Mo. Ct. App. 1999). Anti-stacking provisions for UM benefits are prohibited as against public policy. *Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 212 (Mo. 1992).   Because Missouri law does not require UIM coverage, "the existence of coverage and its ability to be stacked are determined by the contract entered between the insured and the insurer." *Rodriguez v. General Acc. Ins. Co. of America*, 808 S.W.2d 379, 383 (Mo. 1991).  "The same public policy that invalidates anti-stacking provisions of [UM] coverage is equally applicable to [UIM] coverage if the two are treated as the same in an insurance contract." *Krombach* at 212.  Conversely, if the contract language "is unambiguous in disallowing

---

[1] The Court notes the parties' dispute as to how many vehicles were covered under plaintiff's policy at the time of the subject accident.  (Doc. 41 at 1 n.1; Doc. 43-1 at 6.) The number of vehicles covered at the time of the accident is a dispute of material fact only if the policy allows stacking UIM coverage limits.  Because the Court concludes that the policy does not authorize stacking, it does not consider the number of vehicles covered under the policy.

stacking, the anti-stacking provisions are enforceable." *Hall v. Allstate Ins. Co.*, 407 S.W.3d 603, 608 (Mo. Ct. App. 2012).

"Insurance policies are read as a whole, and the risk insured against is made up of both the general insuring agreement as well as the exclusions and definitions." *Todd v. Mo. United School Ins. Council*, 223 S.W.3d 156, 163 (Mo. 2007). Declarations do not grant coverage; rather, they "state the policy's essential terms in an abbreviated form, and when the policy is read as a whole, it is clear that a reader must look elsewhere to determine the scope of coverage." *Owners Ins. Co. v. Craig*, 514 S.W.3d 614, 617 (Mo. 2017). Additionally, "[i]f the language of the endorsement and the general provisions of the policy conflict, the endorsement will prevail, and the policy remains in effect as altered by the endorsement." *Warden v. Shelter Mutual Ins. Co.*, 480 S.W.3d 403, 410 (Mo. Ct. App. 2015) (quoting *Abco Tank & Mfg. Co. v. Fed. Ins. Co.*, 550 S.W.2d 193, 198 (Mo. 1977)).

The Court concludes that the policy prohibits the stacking of UIM coverage. The declarations page summarizes the policy limits and the premiums paid for UM and UIM coverage. It also states that the policy comprises four documents: the Missouri policy, the Missouri Amendment, the company change endorsement, and the personal umbrella liability endorsement. The Missouri Amendment in turn clarifies the coverage provided, clearly prohibiting the stacking of UIM coverage in its UIM subsection. (Doc. 39-3 at 11.) Because the Missouri Supreme Court has clearly stated that declarations pages do not grant coverage, plaintiff's argument that the policy treats UM and UIM coverage similarly when it references them together on the declarations page is unavailing. *See Craig*, 514 S.W.3d at 617.

Plaintiff cites *American Economy Ins. Co. v. Cornejo* to support his contention that the policy lumps UM and UIM coverage together. 866 S.W.2d 174 (Mo. Ct. App. 1993). The policy in *Cornejo* is distinguishable from the policy in this case. In *Cornejo*, the policy provided a separate definition for "underinsured motor vehicle," but it did not distinguish between UM and UIM coverage in its "Limit of Liability" section. *Id.* at 176. The court concluded that the policy provided UM and UIM coverage together, effectively treating both as UM coverage. *Id.* at 177. The court also noted that the policy's declaration pages

showed coverage limits and premium amounts for UM coverage but not for UIM coverage. *Id.* The policy at issue in this case would be analogous to *Cornejo* if the general policy stood on its own, as it combines UM and UIM benefits in a single section. However, the Missouri Amendment distinguishes between the types of coverage by providing separate subsections for UM and UIM coverage. (Doc. 39-3 at 10-12.) Where the language of the Amendment and the general provisions conflict, the Amendment prevails. *See Warden v. Shelter Mutual Ins. Co.*, 480 S.W.3d at 410. Additionally, since *Cornejo* was decided, the Missouri Supreme Court has clearly stated that declarations pages do not create coverage, but rather summarize the coverage that is provided in the policy itself. *See Craig*, 514 S.W.3d at 617. Thus, the declarations page does not inappropriately lump the coverages together when it lists a single premium and coverage limit for UM and UIM coverage.

"An ambiguity arises when there is duplicity, indistinctness or uncertainty in the meaning of words used in [a] policy." *Niswonger*, 992 S.W.2d at 316 (citing *Krombach*, 827 S.W.2d at 210). "An insured cannot create an ambiguity by reading only a part of the policy and claiming that, read in isolation, that portion of the policy suggests a level of coverage greater than the policy actually provides when read as a whole." *Craig*, 514 S.W.3d at 617. To create an ambiguity, the plain language of an anti-stacking provision "must be offset by another provision appearing to *authorize* stacking." *Midwestern Indemnity Co. v. Brooks*, 779 F.3d 540, 546 (8th Cir. 2015).

Plaintiff cites *Niswonger* for the proposition that the charging of a single premium for both UM and UIM coverage renders the anti-stacking provisions ambiguous and unenforceable. (Doc. 43-1 at 2.) Drawing on a previous appellate court holding that "the presence of separately stated coverages with separately stated premiums shown on the declarations page is a significant factor," the *Niswonger* court concluded that the presence of a single premium is a significant factor in favor of finding ambiguity. 992 S.W.2d at 321 (quoting *Lang v. Nationwide Mut'l Ins. Co.*, 970 S.W.2d 828, 834 (Mo. Ct. App. 1998)). *Niswonger*, however, is not binding on this Court, as federal courts are "bound by decisions of the highest state court when interpreting state law." *Progressive Northern Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010). The appellate court's conclusion

in *Niswonger* conflicts with the Missouri Supreme Court's rule in *Craig*, which states that declarations pages summarize, rather than create, coverage, and an insured must look further in the policy to determine the scope of coverage.  *See* 514 S.W.3d at 617.

The first declarations page lists three documents in addition to the general policy, including the Missouri Amendment.  (Doc. 39-2 at 2.)  While the UM coverage section of the general policy does not address UIM coverage by name, it states that if "the other driver has coverage, but not enough to cover your damages, [the policy] pays the difference up to the limit shown on the Coverage Summary."  (*Id*. at 20.)  It does not explicitly authorize or prohibit stacking.  The UM coverage section of the general policy is deleted and replaced by the UM/UIM section of the Missouri Amendment, which contains subsections and different coverage terms for UM and UIM coverage.  (Doc. 39-3 at 10-12.)  Even if the UM section of the general policy were operative, it does not authorize stacking and therefore does not offset the plain language of the anti-stacking provision.  The anti-stacking provision is therefore not ambiguous.  Defendants are entitled to summary judgment on plaintiff's claim of breach of contract and claim for declaratory judgment.[2]

Defendants are also entitled to summary judgment on plaintiff's claim of vexatious refusal to pay.  To establish a claim for vexatious refusal to pay, plaintiff must prove (1) the existence of a policy with an insurer; (2) the insurer's refusal to pay; and (3) the insurer's refusal was without reasonable cause or excuse.  *Dhyne v. State Farm Fire and Cas. Co.*, 188 S.W.3d 454, 457 (Mo. 2006).  Defendants had reasonable cause to refuse to pay.  It is undisputed that defendants paid plaintiff $300,000 in UIM benefits.  (Doc. 40 at 3-4.)  Based on the Court's foregoing analysis of the policy, plaintiff was not entitled to

---

[2] "It is well settled that declaratory relief is not proper where the real cause of action is an action at law for breach of contract." *Century Motor Corp. v. FCA US LLC*, 477 S.W.3d 89, 96 at n.6 (Mo. Ct. App. 2015).  In Count 1 of his complaint, plaintiff alleges that defendants breached the insurance contract by failing to make additional UIM payments as required by the policy. (Doc. 5 at 6.)  In Count 3, plaintiff requests that the Court determine plaintiff's rights and defendants' duties and obligations under the policy. (*Id*. at 9.)  Both counts ask the Court to review the policy and determine whether defendants were obligated to stack the UIM benefits.  Therefore, the Court's analysis as to stacking applies both to Count 1 and Count 3.

stacked UIM coverage.  Defendants' refusal to pay was therefore based on a reasonable interpretation of the policy and was not vexatious; they are entitled to summary judgment on plaintiff's claim of vexatious refusal to pay.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motion of defendants Metlife Auto & Home Insurance, Inc., Metropolitan Casualty Insurance Company, and Economy Premier Assurance Company for summary judgment **(Doc. 37) is granted.**


<u>          /s/ David D. Noce          </u>
**UNITED STATES MAGISTRATE JUDGE**

Signed on September 12, 2022.